*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  April 2, 2015                518276B
_____

In the Matter of MICHAEL GRECO
    et al.,
                        Petitioners,

        v
                                        MEMORANDUM AND JUDGMENT

GORDON C. JENKINS, as Mayor
    and Village Manager of the
    Village of Monticello,
                        Respondent.
_____

Calendar Date:  February 18, 2015

Before:  Peters, P.J., Lahtinen, Garry and Lynch, JJ.

                    _____

        Orseck Law Office, PLLC, Liberty (Kirk O. Orseck of
counsel), for petitioners.

        Sussman & Watkins, Goshen (Michael H. Sussman of counsel),
for respondent.

                    _____

Garry, J.

        Proceeding initiated in this Court pursuant to Public
Officers Law § 36 to remove respondent from the offices of Mayor
and Village Manager of the Village of Monticello.

        Petitioners, who are residents of the Village of Monticello
in Sullivan County, commenced this proceeding in this Court
seeking to remove respondent from the offices of Mayor and
Village Manager pursuant to Public Officers Law § 36.  Respondent
moved to dismiss the petition.  This Court denied the motion and
referred the matter to a Referee to conduct a hearing and report
his findings and recommendations (118 AD3d 1248 [2014]).  During

the hearing, petitioners offered testimony from a Village Trustee, an Assistant District Attorney, two Village police officers and a Village employee, as well as submitting affidavits and other evidence.  Respondent was present and represented by counsel during the hearing, but offered no testimony or evidence on his own behalf.  Following the hearing, the Referee issued a report recommending the removal of respondent from office.  Petitioners move to confirm the Referee's report, and respondent cross-moves to disconfirm the report and dismiss the petition.

Public Officers Law § 36 provides a means by which a public officer for a town or village may be removed for "unscrupulous conduct or gross dereliction of duty or conduct that . . . connotes a pattern of misconduct and abuse of authority" (Matter of Price v Evers, 45 AD3d 1075, 1076 [2007] [internal quotation marks, brackets and citations omitted]).  To warrant removal, an official's misconduct must amount to more than minor violations and must consist of "self-dealing, corrupt activities, conflict of interest, moral turpitude, intentional wrongdoing or violation of a public trust" (Matter of Chandler v Weir, 30 AD3d 795, 796 [2006] [internal quotation marks and citations omitted]; accord Matter of Salvador v Ross, 61 AD3d 1163, 1164 [2009]).  When this matter was previously before this Court, we found that certain allegations against respondent, if proven, would demonstrate a sufficiently serious pattern of abuse of authority and misbehavior to warrant his removal (118 AD3d at 1250).  In a detailed report, the Referee determined that respondent had committed a number of acts of misconduct that were sufficient to warrant his removal.  Although the Referee's findings are not binding upon this Court, they serve "to inform [our] conscience" (Matter of Gehr v Board of Educ. of City of Yonkers, 304 NY 436, 440 [1952] [internal quotation marks and citation omitted]; accord Matter of DeFalco v Doetsch, 208 AD2d 1047, 1050 [1994]) and, upon our independent review, we find that removal is warranted.

The first of the allegations referenced in this Court's earlier decision was a claim that respondent had refused to provide funding for the Village police department in an effort to influence the disposition of certain criminal charges against him (118 AD3d at 1250).  During the hearing, an affidavit from

Village Trustee Carmen Rue was entered into evidence in which Rue averred that she witnessed respondent telling the Village Police Chief that "the Village Police would not receive desperately needed funding until [certain] criminal charges levied against [respondent] . . . were 'resolved.'" Respondent did not present any testimony or evidence of any nature to rebut this claim. The Referee found that he had made the remark, and that he did so in an effort to link the treatment of his criminal charges with Village financial matters. Such a credibility determination by a referee is "entitled to great weight" (Slater v Links at N. Hills, 262 AD2d 299, 299 [1999]). It bears noting that the evidence did not establish that respondent actually withheld funds from the police department. Although the record reveals that the police department did lack funding for certain necessary services — including a functioning heating system in the police station — the testimony indicated that such funding decisions were typically made by the Village Board of Trustees as a whole rather than by respondent alone, and that the funds may have been unavailable for budgetary rather than coercive reasons. Nonetheless, even if the threat was not ultimately carried out, we find that respondent's attempt to influence the disposition of criminal charges against him by threatening to use his public office to withhold municipal funding constituted a clear abuse of authority.

Petitioners next allege that respondent sought "to use his position as Mayor and Village Manager to obtain 'special treatment' from the Village's police department with respect to his various criminal charges and has repeatedly threatened various local law enforcement officials with termination or disciplinary action for pursuing such charges against him" (118 AD3d at 1250). A November 2013 surveillance video submitted with the petition confirms these claims in part, revealing that, while respondent was detained overnight in the Village police station following his arrest on charges of driving while intoxicated, he went on a lengthy tirade in which, among other things, he reminded police officers that they worked for him, threatened that he would "do something tomorrow" about their treatment of him, repeatedly warned that they would be suspended or would suffer other negative repercussions for detaining him, directed dozens of obscene remarks and racist insults at the officers, and

repeatedly attempted to persuade one of the officers to place his personal loyalties above his job duties in respondent's favor. Two police officers testified, among other things, that, during his detention, respondent told them that they were insubordinate and that they would no longer receive overtime pay, referenced ongoing contract negotiations related to the officers' salary and job conditions in a manner that the officers perceived as intimidating, threatened "to hold a special [V]illage [B]oard meeting right then and there" and made numerous statements implying that the officers would suffer negative consequences for his arrest such as "You guys will pay for this," "I hired you," and "What goes around comes around."

Respondent does not deny that he made the remarks in question. Instead, he argues that his arrest was a pretext resulting from discord with the police department resulting from contract negotiations and other political issues, and that his remarks resulted from anger and frustration arising from the allegedly improper circumstances in which he was detained. During respondent's overnight detention, he was handcuffed to a wall for hours in an uncomfortable position with little room for movement; during part of the video, he can be seen attempting to sleep on the floor with one arm over his head, still handcuffed to the wall.[1] The officers testified, however, that respondent was handcuffed because of his angry outbursts and refusal to cooperate with the police, and that he could not be held in a cell because of the police station's lack of heat. The video does not support respondent's further contention that the police disregarded his repeated requests for an attorney. Instead, it reveals that officers asked respondent for the telephone number of the attorney he wished to contact and, when respondent stated that he did not have this information, called respondent's paramour — who was also a Village Trustee — to ask for her assistance in obtaining representation for him. An officer can be heard on the video telling respondent that the paramour then advised police that an attorney had been retained on respondent's

_____

[1]  Respondent's detention was briefly interrupted when officers transported him to a hospital for a medical examination after he complained of heart palpitations.

behalf.

Considering the length of his detention in highly uncomfortable circumstances, some degree of anger and frustration on respondent's part is understandable; nevertheless, the video reveals that many of his objectionable remarks were made shortly after his arrival at the police station. Respondent offered no evidence to support his claim that his arrest resulted from partisan discord rather than from his own actions; on the contrary, it appears that he later pleaded guilty to a related charge. The Referee found that respondent linked his remarks about the union contract negotiations to his arrest in an effort to secure his release and that he was attempting to "trade off" the negotiations for favorable treatment. Respondent offered no alternate explanation for these remarks or for his numerous comments threatening the officers with negative consequences if he was not released. We agree that the unrebutted evidence establishes that respondent attempted to use his public office to intimidate and coerce the officers into giving him special treatment, and that such conduct constitutes self-dealing and an abuse of authority.

Finally, this Court previously noted that respondent had allegedly awarded a "suspiciously low" no-bid contract to a local firm to demolish an asbestos-laden building owned by the Village and dump the resulting debris, and that these actions had allegedly exposed the Village to substantial fines and legal fees (id. at 1250 [internal quotation marks omitted]). The testimony at the hearing supported these claims. Rue — who was, as previously noted, a Village Trustee — testified that the building in question, a former courthouse, was demolished in October 2013 and the debris was illegally dumped in a nearby town. Rue stated that, although she was a Trustee, she did not know that the demolition was scheduled to take place until she received a telephone call while it was going on. She confirmed that decisions of this nature would normally be made by the Board, but stated that the decision to hire this firm to demolish the building was never brought before the Board, that she never saw a bid for the demolition, and that the Board did not vote on it until several months after it took place.

As Rue explained, the Board and respondent had previously discussed the topic of demolishing the building and had been advised by an engineer that the demolition would be extremely expensive because the building contained asbestos.[2] Notably, the firm that carried out the demolition was paid only $5,000. Rue testified that respondent made the decision to demolish the building and, when Rue later asked him why he had done so, he did not deny his involvement and instead falsely insisted that the Board had voted to approve the action.[3] Rue's testimony that respondent acknowledged his role in making this decision was unrebutted, and no evidence of any nature was produced to demonstrate that the action was approved by the Board or that respondent had the authority to contract for the transaction. According to Rue, the Village incurred costs of approximately $90,000 to clean up the demolition and dumping sites, as well as legal fees and other expenses. She further asserted that the firm that conducted the demolition had filed a notice of claim against the Village, contending that it was not advised that there was asbestos in the building before it undertook the job. In the absence of any evidence or testimony to rebut these allegations, the credible proof establishes that respondent improperly contracted for the demolition without Board approval and, further, despite knowing that the building contained asbestos, directed or permitted the illegal disposition of the debris. These actions exposed the Village to substantial costs and liabilities, and respondent thus violated a public trust.

As we previously found, taken together, these actions "rise to the level of 'unscrupulous conduct or gross dereliction of

---

[2]  Rue testified that the engineer told the Board that it would cost $2,500,000 "to demolish the building and fix the main building first," but did not clarify what portion of this figure was related to the demolition.

[3]  On cross-examination, Rue acknowledged that other unidentified individuals could have participated with respondent in making the demolition decision, but she did not waver from her claim that respondent was, at minimum, involved in the decision and that no official Board approval was obtained.

duty or conduct that connotes a pattern of misconduct and abuse of authority'" (id., quoting Matter of Hayes v Ansel-McCabe, 83 AD3d 1180, 1181 [2011]).[4]  Accordingly, we confirm the Referee's report and conclude that respondent's conduct warrants his removal from office pursuant to Public Officers Law § 36 (see Matter of West v Grant, 243 AD2d 815, 815-817 [1997]; Matter of DeFalco v Doetsch, 208 AD2d at 1048-1049; Matter of Williams v Travis, 194 AD2d 969, 969-970 [1993]; Matter of Smith v Perlman, 105 AD2d 878, 878-879 [1984]).  Petitioners' assertions related to Public Officers Law § 30 (1) (e) are rendered academic by this determination.

Peters, P.J., Lahtinen and Lynch, JJ., concur.


ADJUDGED that the petition and motion to confirm the Referee's report are granted, without costs, cross motion to disconfirm and dismiss the petition denied, and respondent is hereby removed from the public offices of Mayor and Village Manager of the Village of Monticello.


ENTER:

Robert D. Mayberger
Clerk of the Court

---

[4]  We limit this determination to those matters that were addressed in our prior decision, although petitioners alleged various additional acts of misconduct, arguing that these also justified respondent's removal, and the Referee made findings pertaining to some of these further allegations.  This Court's determination "should not be construed as either accepting or rejecting those portions of the [Referee's] report that are not expressly adopted herein" (Matter of DeFalco v Doetsch, 208 AD2d at 1050).